# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 21, 2001 Session

## SUSAN RENEE WIECHERT WILSON, ET AL. v. RUSHTON E. PATTERSON, JR., M.D.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 70075-2     The Honorable James F. Russell, Judge**

---

### No. W2000-02771-COA-R3-CV - August 10, 2001

---

This is a medical malpractice case. Plaintiffs, husband and wife, sued defendant physician for injuries allegedly caused to Wife by the physician's negligence. Physician moved for summary judgment supported by his affidavit that he conformed to the required standard of care. Plaintiffs, in opposition to the summary judgment, filed a deposition and affidavit of a physician practicing in Kentucky that expressed his knowledge of the standard of care in Memphis and similar communities. Physician moved to strike the affidavit primarily on the ground that plaintiffs' physician expert did not show a familiarity with the standard of care in Memphis, Tennessee. The court granted the motion to strike the affidavit and also granted summary judgment to defendant physician. Plaintiffs appeal. We reverse and remand.

### Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Lanier Fogg, Memphis, For Appellants, Susan Renee Wiechert Wilson and James Kelly Wiechert

David M. Cook, Karen S. Koplon, Greg A. Ziskind, Memphis, For Appellee, Rushton E. Patterson, Jr., M.D.

# OPINION

On May 24, 1995, plaintiffs, Susan Renee Wiechert and James Kelly Wiechert, filed a complaint against defendant, Rushton E. Patterson, Jr. M.D.[1]  The complaint alleges that Susan Renee Wiechert was a patient of the defendant, Dr. Patterson, and that on May 25, 1994, she was admitted to the Methodist Hospital in Memphis for a diagnostic laparoscopy. The complaint avers that during the procedure, Ms. Wiechert was caused to suffer multiple lacerations of her abdomen, including a laceration of her left iliac artery.  The complaint further avers that as a result of internal lacerations, Ms. Wiechert sustained massive internal bleeding and was forced to undergo an emergency exploratory laparotomy.  Plaintiffs alleges that the injuries sustained by Ms. Wiechert were the direct and proximate result of negligence on the part of Dr. Patterson, as he failed to exercise ordinary care and diligence under the circumstances.  Plaintiffs seek damages for Ms. Wiechert's alleged life threatening injuries, medical expenses, physical pain, mental anguish, permanent scarring, and disability, and Mr. Wiechert's loss of consortium.

Dr. Patterson's answer admits that Ms. Wiechert sustained a laceration to her left common iliac artery during diagnostic laparoscopy and that she sustained internal bleeding, and that a laparotomy was necessitated to control the injury, however, he denies that he was guilty of any negligent act or omission which was the proximate cause of any injury or damages to Plaintiffs.  Dr. Patterson avers that in treating Ms. Wiechert, he exercised that degree of skill and learning ordinarily used by members of his profession in good standing and in similar practice in his community, and that at all times he used reasonable care and diligence in the treatment of Ms. Wiechert.  The answer further avers that to the extent Ms. Wiechert sustained any injury or that either of the plaintiffs sustained any damages arising out of the course of medical treatment administered by him, such injury or damage was in conjunction with known and unknown bodily processes, and had nothing to do with and was not caused by negligence or malpractice on his part.  He also asserts that all medical practices, treatments and procedures administered by him were acceptable and appropriate for the physical condition of Ms. Wiechert.

Dr. Patterson filed a motion for summary judgment and an affidavit in support thereof.  In his affidavit, Dr. Patterson expresses his knowledge of the standard of professional practice required and states that Ms. Wiechert was first seen by him in his office on May 12, 1994 with a chief complaint of a persistent breast lump. Ms. Wiechert returned to Dr. Patterson's office one week later and continued to complain of pelvic pain and dyspareunia, and at that time he discussed various treatment options.  Ms. Wiechert wanted to proceed with a laparoscopy to diagnose possible endometriosis and was admitted to Methodist Hospital on May 25, 1994.  The affidavit states that the laparoscopy revealed no evidence of endometriosis, but that the trocar[2] used in the procedure

---

[1]     The complaint also included as a defendant Patterson Gynecology and Obstetrics, a partnership.  On motion, the trial court dismissed the complaint against the partnership.

[2]     A trocar is a sharp-pointed instrument used for piercing a cavity wall in paracentesis. DORLAND'S
(continued...)

lacerated the left common iliac artery which is a known complication of laparoscopy and was explained fully to Ms. Wiechert. An emergency laparotomy was performed to control the injury, which was repaired and recovery was uneventful. Dr. Patterson stated that all medical practices, treatments, and procedures administered by him were acceptable and appropriate for Ms. Wiechert, and that at no time was he guilty of any negligence or malpractice.

In opposition to Dr. Patterson's motion for summary judgment, the Wiecherts filed the affidavit of Ms. Wiechert in which she stated as follows: On May 12, 1994, she had an appointment with Dr. Patterson to discuss a lump in her breast, some pelvic pain and a urinary tract infection. Dr. Patterson gave her some medication for the infection and scheduled another appointment for May 19, 1994. On that date, Dr. Patterson examined Ms. Wiechert and informed her that it was necessary that he perform a laparoscopy to determine the cause of the pelvic pain and that no other treatment options were provided. Dr. Patterson described the laparoscopy as "band-aid surgery," however did not inform her of the possible adverse consequences of the surgery. As a result of having this surgery, Ms. Wiechert has a 8 3/4 inch keloid scar from 1 ½ inches above her navel to 1 inch into the pubis.

Plaintiffs filed the affidavit of David S. Swan, M.D. on November 16, 1995. Dr. Swan is licensed to practice medicine in Kentucky and is board certified in obstetrics and gynecology. Dr. Swan stated in his affidavit that he is familiar with the recognized standards of acceptable professional medical practice in the field of obstetrics and gynecology and more specifically, the care of someone in the position of Ms. Wiechert in an area such as Memphis, Tennessee in 1994. In addition, Dr. Swan stated that the standard of care in Memphis would be similar to that of the Lexington, Kentucky area where he practices, and that he was practicing gynecology in Berea, Kentucky during the year immediately preceding the date which Dr. Patterson performed the laparoscopy on Ms. Wiechert. The affidavit further stated that Dr. Patterson breached the recognized standard of acceptable professional practice in Memphis by failing to carry out a proper evaluation of Ms. Wiechert which resulted in the performance of a laparoscopy which was unnecessary at that time, and that the injury to Ms. Wiechert's left iliac artery was a direct result of this unnecessary surgery. Additionally, Dr. Swan states that Dr. Patterson breached the recognized standard of acceptable professional practice in Memphis by inserting the trocar at an angle and depth whereby he struck the left iliac artery, and that as a direct result of Dr. Patterson's breach of the standard of care, Ms. Wiechert sustained a laceration to her left iliac artery. Dr. Swan stated that in his opinion to a reasonable degree of medical certainty, Ms. Wiechert would not have suffered the injury had Dr. Patterson adhered to the recognized standard of acceptable medical practice.

Subsequently, Dr. Swan's deposition was taken and filed as part of the record. Dr. Swan testified that in the evaluation of pelvic pain and the indications of performing a laparoscopy there is a nationwide standard. As to the procedure itself, Dr. Swan agreed that nicking the left iliac artery

---

[2](...continued)
ILLUSTRATED MEDICAL DICTIONARY 1470 (23rd ed. 1957).

is a recognized risk of performing a laparoscopy, however stated that when that artery is nicked during the procedure, it is the result of a deviation from the standard of care.

On March 6, 2000, Dr. Patterson filed a second motion for summary judgment and memorandum in support thereof asserting that Plaintiffs had failed to satisfy their burden pursuant to T.C.A. § 29-26-115 which requires that plaintiffs prove by expert testimony the standard of care in the defendant's speciality of obstetrics and gynecology, a deviation from the standard, and an injury caused by the deviation. Dr. Patterson avers in his motion that Plaintiffs disclosed as their only non-treating expert witness Dr. David Swan, a doctor from Berea, Kentucky. The motion asserts that Dr. Swan had made no inquiry into the Memphis medical community, had never been to Memphis, other than to testify in medical malpractice trials, and that Plaintiffs had not shown, beyond a conclusory assertion of a national standard of care, that Dr. Swan is familiar with the Memphis medical community.

Plaintiffs then filed another affidavit from Dr. Swan in opposition to Dr. Patterson's motion for summary judgment which states:

> 1. I am familiar with the recognized standard of acceptable professional medical practice in the field of obstetrics and gynecology for Lexington, Kentucky.
>
> 2. In my opinion, the Lexington, Kentucky area is a similar area to Memphis, Tennessee with regard to the standard of care of acceptable professional medical practice in the field of obstetrics and gynecology and in regard to the medical services provided in this area. Both Lexington, Kentucky and Memphis, Tennessee are regional medical centers and are the locations of their state medical schools.
>
> 3. I am familiar with the recognized standard of care of acceptable professional medical practice in the field of obstetrics and gynecology in Lexington, Kentucky because I was an assistant professor in the Department of Obstetrics and Gynecology at the University of Kentucky which is located in Lexington, Kentucky for two years from 1970 to 1972. At the time of Ms. Wiechert's subject injury, I was an assistant clinical professor in the Department of Obstetrics and Gynecology at the University of Kentucky located in Lexington, Kentucky. I also had courtesy privileges at three hospitals in Lexington, Kentucky which I utilized from time to time.
>
> 4. Further, I have testified in at least ten medical malpractice cases in Memphis, Tennessee. As a consequence, I have had the opportunity to review the depositions of and hear the testimony of numerous Memphis, Tennessee physicians on the recognized

-4-

standard of care of acceptable professional medical practice in the field of gynecology and obstetrics. This has confirmed my opinion that the recognized standard of care of acceptable professional medical practice in the field of obstetrics and gynecology in Memphis, Tennessee is the same as that of Lexington, Kentucky in regard to the way that patients are evaluated for diagnostic laparoscopys and the manner in which the laparoscopic procedure is executed.

Dr. Patterson filed a motion to strike the affidavit of Dr. Swan, arguing that statements made in his affidavit regarding his familiarity with the standard of care in Memphis are in contradiction with his deposition testimony that the applicable standard of care is a national standard of care. Dr. Patterson asserts that because Dr. Swan directly contradicts himself in sworn affidavits and depositions on the issue of his familiarity with the local standard of care, his affidavit must be stricken as inherently untrustworthy and therefore, inadmissable. On October 5, 2000, after a hearing, the trial court entered an order granting defendant's motion to strike Dr. Swan's last affidavit and granting summary judgment to defendant. The order states in pertinent part:

> [T]he plaintiff is not able to establish the requirements of Tennessee Code Annotated § 29-26-115(a)(1) insofar as the locality rule is concerned as has been interpreted in the case of *Mabon v. Jackson-Madison County General Hospital,* 968 S.W. 2d 826 (Tenn. Ct. App. 1997). The Court specifically rejects plaintiff's argument that the standard of care is a national standard or that the standard of care in Memphis, Tennessee is the same as in Lexington, Kentucky because all gynecologist read the same journals and articles and because they have to pass the same examination to be board certified. The Court relies upon the case of *Beaty v. Irwin,* 2000 WL 66028 (Tenn. Ct. App. 2000), in which the Court of Appeals for the Eastern Section rejected the identical argument. The Court further finds Dr. Swan's conclusion that Dr. Patterson deviated from the standard of care because he cut the iliac artery, without having any basis for the opinion, amounts to a presumption of negligence. T.C.A. § 24-26-115(c) strictly disallows any presumption of negligence. For all the foregoing reasons, the Court is of the considered opinion that the motion to strike the affidavit should be granted and the motion for summary judgment should likewise be granted.

Plaintiffs appeal the judgment of the trial court and present three issues for review which, as stated in their brief, are:

> I. Did Plaintiffs make a *prima facie* showing that Dr. David Swan had

knowledge of the recognized standard of acceptable professional practice in Memphis, Tennessee or in a similar community as to the treatment of pelvic pain and of the performance of a diagnostic laparoscopy.

II. Did the Plaintiffs, in response to the Motion For Summary Judgment filed by Defendant on October 11, 1995, make a *prima facie* showing that the Defendant deviated from the appropriate standard of acceptable medical practice in his performance of a diagnostic laparoscopy upon Plaintiff.

III. Did the trial court err in striking the affidavit of Dr. David Swan dated September 28, 2000 which was submitted by Plaintiffs in opposition to the Defendant's Motion For Summary Judgment And Supporting Memorandum filed on April 6, 2000.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

-6-

In determining whether summary judgment was proper, we first address the correctness of the trial court's decision to strike Dr. Swan's affidavit, as the dispositive issue on appeal is whether the opinion of Plaintiffs' expert, that defendant's treatment of Ms. Wiechert did not meet the standard of professional care in the community, or a similar community, is admissible in evidence. A plaintiff's burden in a medical malpractice case is defined in T.C.A. § 29-26-115:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the claimant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
>
> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.
>
> (c) In a malpractice action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

T.C.A. § 29-26-115 (a) - (c) (2000). In order to qualify as an expert in a medical malpractice action, a physician is not required to be familiar with all the medical statistics of a particular community. *Ledford v. Moskowitz,* 742 S.W.2d 645 (Tenn. Ct. App. 1987). An expert tendered to demonstrate a breach of duty must be familiar with the standard of care in the community in which the defendant practices or in a similar community in order to meet the threshold requirement regarding the standard standard of care in the locality. Although the trial court has broad discretion in determining the qualifications of expert witnesses and the admissibility of their testimony, *Shelby County v. Barden,* 527 S.W.2d 124 (Tenn. 1975), reversal of the trial court's discretion is appropriate where the trial court's action is clearly erroneous or where there has been an abuse of discretion. *Thomas v. Harper,* 53 Tenn. App. 549, 385 S.W.2d 130 (1964).

The trial court found that Plaintiffs were not able to establish the requirements of T.C.A. § 29-26-115(a)(1) insofar as the locality rule is concerned as interpreted in *Mabon v. Jackson-Madison County General Hospital,* 968 S.W. 2d 826. However, the facts in *Mabon* appear to be distinguishable from the instant case. In *Mabon*, this Court found that the plaintiff's expert was not qualified to give an opinion as to whether the plaintiff's wife's death was caused by a doctor's breach of the standard of care in treating her bowel obstruction because the expert was not familiar with the standard of care in the area of Jackson, Tennessee, where the treatment took place. In that case, plaintiff's expert, Dr. Shane, stated in his affidavit that he was familiar with the recognized standard of acceptable medical practice in areas such as Jackson, Tennessee and at a hospital the size of the facility at which the plaintiff's wife received treatment. The *Mabon* Court noted that Dr. Shane stated that the standard of care in Jackson would be comparable to cities and facilities in which he practiced medicine, and is the same standard used for New York and other large cities, which, in effect, is a national standard. *Id.* At 830. The Court found significant Dr. Shane's statement that the defendant failed to meet the standard of care that "should have been available" in a city the size of Jackson, Tennessee, finding that the statement "illustrates that his statement in his affidavit regarding the standard of care is premised on the national standard of care and not on the standard of care for Jackson or similar communities." *Id.* In addition, the Court noted that in his deposition, Dr. Shane "readily admits his complete lack of knowledge of Jackson's medical community..." *Id.* The *Mabon* Court found a complete lack of knowledge concerning a community's medical resources would be contrary to knowledge of the required standard of care. *Id.*

The trial court also relied on the case of *Beaty v. Irwin,* No. E1999-00014-COA-R3-CV, 2000 WL 66028 (Jan. 27, 2000), stating that in *Beaty*, the Eastern Section of the Tennessee Court of Appeals rejected the same argument as presented in the instant case. The trial court presents the argument as: "that the standard of care is a national standard or that the standard of care in Memphis, Tennessee is the same as in Lexington, Kentucky because all gynecologist read the same journals and articles and because they have to pass the same examination to be board certified." However, we distinguish the facts in *Beaty* from the facts before us. In *Beaty* the plaintiff's expert stated that he had not done anything to determine the standard of care in Knox County, the community where the defendant practiced as a dentist. In addition, although plaintiff's expert claimed that he believed that Knox County and Augusta, Georgia, where he lived, were similar communities, he had not done any research to determine if that was true. *Id.* at *1. In *Beaty* the plaintiff made efforts to buttress

their expert's opinion by filing a supplementary affidavit containing claims of having written an article for the Tennessee Dental Association, having taken a course in Tennessee, though not in Knox county, contact with individuals in Knox County, and a familiarity with the number of dentist in that area. The expert claimed to be familiar with the standard of care in Knoxville based on his belief that the standard of care was the same throughout the Southeast region and possibly the country. On appeal, the Court found no abuse of discretion in not allowing the testimony of plaintiff's expert stating that although plaintiff's expert testified that he thought Knoxville and Augusta were similar communities, he had not produced facts to support that this was true.

Dr. Swan, in his deposition, indicates that there is a national standard of care for physicians in this particular specialty and that therefore he is familiar with the standard of care in Memphis, Tennessee. In his second affidavit, which was stricken by the trial court, he establishes that he is familiar with the recognized standard of care in the field of obstetrics and gynecology in Lexington, Kentucky, by virtue of his experience set out in his affidavit. He also opines that Lexington, Kentucky and Memphis, Tennessee are similar areas with regard to the standard of care of acceptable professional medical services, stating: "Both Lexington, Kentucky and Memphis, Tennessee are regional medical centers and are the locations of their state medical schools." The affidavit goes somewhat further stating that because of Dr. Swan's involvement in medical malpractice cases in Memphis, Tennessee, he has the opinion that the recognized standard of care of acceptable professional medical services of obstetrics and gynecology in Memphis is the same as that in Lexington.

Dr. Patterson additionally argues that according to Tennessee law, Dr. Swan's statements cancel each other out as they are in direct conflict with one another.

> Tennessee follows the rule that contradictory statements by the same witness regarding a single fact cancel each other out. *See State v. Matthews,* 888 S.W.2d 446, 449 (Tenn.Crim.App.1993); *Gambill v. Middle Tenn. Med. Ctr.,* 751 S.W.2d at 149-50. The Tennessee Supreme Court has characterized mutually contradictory statements by the same witness as "no evidence" of the fact sought to be proved. *See Johnston v. Cincinnati N.O. & T.P. Ry.,* 146 Tenn. 135, 160, 240 S.W. 429, 436 (1922). However, in order to be disregarded under the so-called cancellation rule, the allegedly contradictory statements must be unexplained and neither statement can be corroborated by other competent evidence. *See State v. Matthews,* 888 S.W.2d at 450; *Gambill v. Middle Tenn. Med. Ctr.,* 751 S.W.2d at 151. When the cancellation rule is invoked at the summary judgment stage to challenge evidence opposing the motion, the courts must view the challenged evidence in the light most favorable to the opponent of the motion.

*Church v. Perales,* No. M1997-00227-COA-R3-CV, 2000 WL 1183074 at *17 (Tenn.Ct.App. Aug. 22, 2000).

Upon a review of the record in a light that is most favorable to Plaintiffs, we do not find statements made by Dr. Swan regarding the applicable standard of care to be in conflict with one another. In response to questions regarding the standard of care for the treatment of pelvic pain, Dr. Swan states in his deposition that there is a nationwide standard of care. In his first affidavit, Dr. Swan states that "the standard of care in Memphis would be similar to that of the Lexington, Kentucky the area where I practice" and further that "I was practicing Gynecology in Berea, Kentucky during the year immediately preceding the date which Dr. Patterson performed the laparoscopy on Susan Wiechert." In his second affidavit, Dr. Swan enumerates similarities between Memphis and Lexington and gives facts to substantiate his familiarity with the standard of care in Memphis including his involvement in other medical malpractice case in Memphis. We find no inherent contradiction in the statements made by Dr. Swan. "Moreover, when the cancellation rule is invoked at the summary judgment stage, the challenged evidence opposing the motion, the court must view the challenged evidence in the light most favorable to the opponent of the motion." *Church*, 2000 WL 1183074 at *17 (Aug. 22, 2000).

The trial court also found that Dr. Swan concluded that Dr. Patterson deviated from the standard of care because he cut the iliac artery without having any basis for the opinion, thereby making a presumption of negligence which is strictly disallowed by T.C.A. § 29-26-115(c). When an expert's opinion is challenged, the court is to determine whether the opinion is based on creditable facts or data sufficient to provide some basis for the opinion. *McDaniel v. CSX Transp., Inc.,* 955 S.W.2d 257, 265 (Tenn. 1997). Our task is not to determine the expert's credibility or the weight to be giving the evidence, but rather to review the challenged opinion and determine if it has some legally-acceptable basis from which the expert's conclusion could be rationally drawn. *Church*, 2000 WL 1183074 at *13 (citing *Devore v. Deloitte & Touche,* No. 01A01-9602-CH-00073, 1998 WL 68985, at *9-10 (Tenn. Ct. App. Feb. 20, 1998)). Although a lack of precision by Dr. Swan may eventually undermine the weight of his testimony, it is not the task of the appellate court to weigh the evidence at the summary judgment s stage of the proceedings. *Id*, at *18.

Dr. Swan's opinions are based on his personal review of Ms. Wiechert's medical records including the office records of Drs. Patterson and McDaniel[3], the hospital records for Methodist Hospital from May 25 through June 1, 1994, the deposition of Dr. Patterson taken August 24, 1995, and Dr. Patterson's affidavit. Dr. Swan's affidavit states that he graduated from medical school in 1962, and is currently licensed to practice medicine in Kentucky. He is board certified in obstetrics and gynecology. Dr. Swan testified that nicking the left iliac artery in this procedure, even though considered to be a recognized risk and complication, is a result of deviation from the standard of care, stating in his deposition:

> A.  Okay. I have already defined the standard of care, that the trocar must be passed into the abdominal cavity parallel to the midline in the midline. It should be passed to a depth that permits

---

[3]  Dr. McDaniel is a general surgeon who assisted Dr. Patterson in the laparotomy at Dr. Patterson's request when he discovered that blood was accumulating in Ms. Wiechert's abdominal cavity.

-10-

entry into the peritoneal cavity at the level of the anterior abdominal wall.

Q. Right.

A. That is the standard of care.

A. Right.

A. As previously testified to, the iliac artery is far deeper, far further from that point. One person has the control of the placement of that trocar and that is the surgeon. If that trocar goes anywhere else but directly in the midline and directly into the peritoneal cavity, then who is doing it, the surgeon. He is responsible for that deviation from standard of care.

Ms. Wiechert suffered damages resulting from a laceration to her left iliac artery which occurred during a procedure preformed by Dr. Patterson. In his deposition, Dr. Patterson testified that during the surgery he made two insertions of the trocar into the peritoneal cavity because the first insertion was too small to accommodate the insertion of the laparoscope. When Dr. Patterson was able to view the peritoneal cavity, he noticed significant bleeding in the cavity and requested the assistance of Dr. McDaniel. According to Dr. Patterson's deposition the distance from the point of entry to Ms. Wiechert's left iliac artery injury was significantly more than the entry point of the trocar to the location where Dr. Patterson intended to place the trocar to enter the peritoneal cavity. Dr. Patterson further testified that the risk of striking the left iliac artery was remote, and injury to the iliac artery could be caused by the angle at which the trocar is inserted and/or the distance that the trocar enters the cavity. He states that there were no abnormalities in Ms. Wiechert's anatomical structures.

Admittedly, when a plaintiff is relying on the standard of care in a similar community, there must be proof that the community is similar to the one where the defendant physician practices. *See Mabon v. Jackson-Madison County General Hosp.*, 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997). Although Dr. Swan's testimony concerning the similarity of Lexington and Memphis is somewhat meager, we believe this testimony in conjunction with Dr. Swan's testimony concerning his knowledge of the standard of care of Memphis is barely sufficient to withstand attack at the summary judgment stage of the proceeding. Therefore, the order striking Dr. Swan's affidavit should be reversed and his testimony in its entirety considered for summary judgment purposes.

Viewing the record as a whole and considering Dr. Swan's testimony along with the testimony of Dr. Patterson, there does appear to be material issues of fact in dispute concerning deviation from the standard of care.

Accordingly, the order of the trial court granting summary judgment to defendant is reversed. The case is remanded to the trial court for further proceedings as may be necessary. Costs of the appeal are assessed against the appellee, Dr. Rushton E. Patterson.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.