*RECOMMENDED FOR FULL-TEXT PUBLICATION*
*Pursuant to Sixth Circuit Rule 206*

ELECTRONIC CITATION: 2003 FED App. 0034P (6th Cir.)
File Name: 03a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

KENT A. SOMMER and
ANDREA SOMMER,
     *Plaintiffs-Appellants,*

     *v.*

G. WILLIAM DAVIS and
CHARLES G. NORTON,
     *Defendants-Appellees.*

No. 01-5761

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-01115—William J. Haynes, Jr., District Judge.

Argued: December 10, 2002

Decided and Filed: January 30, 2003

Before: NORRIS and GILMAN, Circuit Judges;
McKEAGUE, District Judge.*

_____

*The Honorable David W. McKeague, United States District Judge
for the Western District of Michigan, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** Walter C. Grace, WOMICK LAW FIRM, Marion, Illinois, for Appellants. William S. Walton, MILLER & MARTIN, Nashville, Tennessee, C. Bennett Harrison, Jr., CORNELIUS & COLLINS, Nashville, Tennessee, for Appellees. **ON BRIEF:** John Paul Womick, WOMICK LAW FIRM, Carbondale, Illinois, for Appellants. William S. Walton, Robert L. Trentham, MILLER & MARTIN, Nashville, Tennessee, C. Bennett Harrison, Jr., Bryan K. Williams, CORNELIUS & COLLINS, Nashville, Tennessee, Darrell G. Townsend, HOWELL & FISHER, Nashville, Tennessee, for Appellees.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Kent A. Sommer and his wife, Andrea Sommer, brought suit against two doctors, G. William Davis and Charles G. Norton, alleging that they had negligently performed surgery on Mr. Sommer. Because the district court concluded that the Sommers had failed to introduce any competent evidence that either defendant had breached the requisite standard of care, it granted summary judgment in favor of the defendants. The Sommers appeal, arguing that the district court erred in determining that their expert witnesses were not competent to testify under Tennessee law. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

In July of 1996, Kent Sommer traveled from his home in Carbondale, Illinois to Nashville, Tennessee to see G. William Davis, M.D., an orthopedic surgeon. Sommer was

granted against them and whether they had a facially meritorious defense to the judgment. *Id.* at 105-06.

At the May 7, 2001 pretrial conference—two weeks before the Rule 104 hearing—the district court asked counsel for the Sommers: "Well, okay. It seems to me that if Dr. Gornet can't express an opinion as an expert witness, how are you going to prevail in this case?" Counsel for the Sommers replied: "I can't possibly prevail, Your Honor." Later during the same conference, the district court commented: "Seems to me like if that motion—if he is not—the certification, if he can't meet the requirement for an expert witness in this area, then it seems to me like the case is out. And there is no point of bringing a jury in the next day. Does either side dispute that?" Counsel for the Sommers responded: "No, sir; I don't." The Sommers thus had ample notice that the district court would enter judgment against them if Dr. Gornet was excluded from testifying as an expert witness. Finally, given the exclusion of Dr. Gornet's expert testimony, they had no facially meritorious defense to summary judgment. We therefore hold that the district court did not abuse its discretion in entering judgment in favor of Davis on its own motion.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

Gornet's testimony concerning the similarity of Nashville and St. Louis resemble the evidence found to be lacking in *Mabon*, whereas other aspects are analogous to the evidence that barely passed muster in *Wilson*. We will find an abuse of discretion only when we have a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733, 740 (6th Cir. 1999). Particularly given Dr. Gornet's acknowledgement that he did not "know any of the characteristics of the Nashville medical community" at the time of Sommer's surgery, we conclude that the district court did not abuse its discretion in refusing to allow Dr. Gornet to express his opinions regarding the applicable standard of care.

**E.    The district court did not err in granting judgment to Davis**

The Sommers could not possibly prove their claims against Davis once they were deprived of the opinion testimony of both Dr. Loomis and Dr. Gornet. They have not contended otherwise before either the district court or this court. After the district court decided to preclude Dr. Gornet from giving expert testimony, Davis was therefore entitled to judgment as a matter of law.

But Davis did not have a motion for summary judgment pending before the district court. Instead, the court dismissed the action with prejudice on its own initiative. The Sommers argue that this procedure was improper. They assert that Davis should have been required to wait until the close of their case at trial to move for judgment as a matter of law.

"[T]he procedural decision to enter summary judgment *sua sponte* must . . . be reviewed to determine if the court abused its discretion by entering the judgment on its own motion." *Employers Ins. of Wasau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995). Factors to consider in making this determination include whether the parties who would oppose such a judgment had notice that judgment could be

suffering from back pain, which was eventually attributed to degenerative changes in a disk in the lower part of his spine. After conservative treatment failed to alleviate the pain, Davis performed surgery on Sommer's back on July 15, 1997 in a Nashville hospital. The procedure involved the excision of the problematic disk and the implantation of artificial devices to stabilize Sommer's spine and thereby allow it to fuse.

On January 14, 1998, Sommer returned to the same Nashville hospital so that the stabilizing devices could be removed. This time the procedure was performed by Charles G. Norton, M.D., an associate of Davis's. He removed the artificial devices and verified that Sommer's spine had fused.

Sommer's condition deteriorated shortly after leaving the care of his Nashville physicians. He subsequently sought treatment from Matthew F. Gornet, M.D., at a clinic in St. Louis, Missouri in August of 1998. His treatment in Missouri convinced Sommer that his Nashville doctors had negligently caused him injury.

**B.    Procedural background**

Sommer and his wife brought suit against Davis on December 3, 1998 in the United States District Court for the Middle District of Tennessee. Nearly eight months later, the Sommers amended their complaint to add Norton as a defendant. The magistrate judge entered a stipulated case management order on March 2, 2000. Among the dates included in the order was a June 1, 2000 deadline for the Sommers to provide disclosures of any expert witnesses in accordance with Rule 26 of the Federal Rules of Civil Procedure. (This was already the second scheduling order in the case to include a cut-off date for expert witnesses. The initial expert-disclosure deadline was August 20, 1999.) Toward the end of May 2000, the Sommers filed an unopposed motion to extend the existing deadlines by 45 days. July 15, 2000 was then set as the new expert-disclosure date.

Norton moved for summary judgment on October 16, 2000. After the Sommers sought additional time to respond to the motion, the district court extended the time to November 22, 2000. The Sommers filed their opposition on November 27, 2000, and then filed additional papers in opposition the following day. An affidavit by Dr. Gornet and an unsworn letter dated November 21, 2000 from Gregory J. Loomis, M.D., a physician practicing in Evansville, Indiana, were attached to the Sommers' papers in opposition to the motion.

On February 7, 2001, the defendants jointly moved to exclude Dr. Gornet from testifying at trial unless he made himself available for a deposition. They also expressed concern over the possibility that the Sommers might seek to offer Dr. Loomis as a testifying expert, even though he had not been disclosed as one. On February 21, 2001, the Sommers filed a response in opposition to the defendants' motion. The primary ground of their opposition was that "Dr. Gornet, first, is not a retained expert. Dr. Gornet is a treating doctor." They specifically denied that Dr. Gornet was an expert witness within the purview of Rule 26.

Five days later the Sommers moved for leave to file "a supplemental Rule 26 opinion witness disclosure containing the identification of Dr. Gregory Loomis." The defendants argued that the district court should deny this motion because the Sommers had not identified any reason for their failure to identify Dr. Loomis by July 15, 2000, and because trial was scheduled for May 22, 2001. Davis subsequently moved for an order in limine to exclude Dr. Loomis as an expert witness on the ground that Dr. Loomis was not competent under Tennessee law to testify on any issue in the case. He also filed a similar motion that sought to exclude Dr. Gornet as an expert witness, but this motion alternatively requested a hearing to determine the admissibility of Dr. Gornet's testimony pursuant to Rule 104 of the Federal Rules of Evidence.

On April 25, 2001, the district court denied the Sommers' motion to disclose Dr. Loomis as an expert witness, warned

though less extensive than, the knowledge of the proposed expert in *Wilson*, who had reviewed the testimony of numerous local physicians.

Stating that the standard of care has no variance nationally, however, resembles the type of assertion that was rejected in *Mabon*. "While an expert's discussion of the applicability of a national standard of care does not require exclusion of the testimony, such evidence may not substitute for evidence that first establishes the requirements of Tenn. Code Ann. § 29-26-115(a)(1)." *Robinson*, 83 S.W.3d at 724. Dr. Gornet also admitted that he did not "know any of the characteristics of the Nashville medical community" at the time of Sommer's surgery. The proposed expert in *Wilson* made no similar statement.

It may well be that the standard of care for surgery involving spinal fusion is in fact uniform nationwide. But neither this possibility, which has not been established in this record, nor our policy views of medical malpractice litigation control this case. Absent a federal question, "the law to be applied in any case is the law of the state. And whether the law of the state be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Tennessee Supreme Court recently rebuffed a plaintiff who urged the court to adopt "a national standard of care for all malpractice actions, malpractice actions involving physicians who are board-certified in a particular area, or malpractice actions involving a specific treatment issue or area of medicine." *Robinson*, 83 S.W.3d at 723. In rejecting this request, the court specifically "decline[d] to adopt the plaintiff's interpretation based on either policy arguments or alleged evidence of the existence of a national standard of care in the medical community." *Id.* at 723-24. For us to do otherwise would lead to the kind of forum shopping that was halted by the decision in *Erie*.

Confining ourselves to the application of Tennessee law as articulated by its courts, we note that certain aspects of Dr.

standard of care he is familiar) was a similar community to Nashville as follows:

> I feel the communities are similar as far as demographics. I feel that their training, the medical schools here are very, very similar. Washington University and Vanderbilt are both acknowledged as outstanding. In fact, if you look, they are in the same consortium of medical schools. There's about 12 medical schools that are sort of an elite group. Vanderbilt and Washington University are like that.
>
> As far as the community down here, as we have talked about, reviewing information I have, there are similar hospitals, similar procedures are performed. We have meetings with [sic] where all of us attend the meetings, hear the same lectures. And so I feel confident saying that.

Dr. Gornet also testified that he personally knew one physician from Nashville and that he had seen a couple of patients from that city.

On the other hand, Dr. Gornet affirmed that "[t]he standards [for spinal fusion surgery] do not vary regardless of where and under what circumstances in the United States of America that surgery is performed." At another point during the same hearing, moreover, counsel for Davis asked him: "You don't know any of the characteristics of the Nashville medical community at that time, do you, sir?" Dr. Gornet replied: "In 1997; that's correct."

Comparison of Washington University and Vanderbilt is similar to the statement that "Lexington, Kentucky and Memphis, Tennessee are regional medical centers and are the locations of their state medical schools," which was part of the evidence that the *Wilson* court found barely sufficient under Tennessee Code § 29-26-115(a). Dr. Gornet also had additional bases for evaluating the similarity of Nashville and St. Louis; that is, he knew one doctor from Nashville and had seen a couple of Nashville patients. This is analogous to,

the Sommers that Dr. Gornet would not be permitted to testify at trial unless he made himself reasonably available for a deposition, and granted Norton's motion for summary judgment. The Sommers moved for reconsideration.

After conducting the requested Rule 104 hearing, the district court ruled that Dr. Gornet was not competent under Tennessee law to testify about the standard of medical care in Nashville or in a community similar to Nashville. It therefore granted Davis's motion to exclude Dr. Gornet from testifying. Because this rendered the Sommers unable to carry their burden of proof, the district court on its own initiative dismissed the action with prejudice. Finally, the district court denied the Sommers' motion to reconsider the award of summary judgment to Norton. This timely appeal followed.

## II.   ANALYSIS

### A.   The district court did not err in granting summary judgment to Norton

We review the district court's grant of summary judgment de novo. *Sperle v. Michigan Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering such a motion, the court construes all reasonable factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In the case before us, the Sommers argue that summary judgment for Norton was improper because genuine issues of material fact remained in dispute regarding their claim against him. The Sommers alleged that "on or about January 14, 1998, Dr. Norton undertook to perform an orthopaedic surgical procedure on the Plaintiff in which certain hardware

referred to as the vari-grip system was removed [and] [t]hat Dr. Charles G. Norton negligently performed said procedure to include but not limited to adequately exploring Mr. Sommer's fusion." To prevail on this medical malpractice claim against Norton, they had to prove the following:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a).

None of the evidence produced by the Sommers in their response to Norton's motion for summary judgment even mentioned Norton, let alone identified facts from which a jury could conclude that he had been negligent. As noted in Part I.B. above, the Sommers filed an affidavit by Dr. Gornet and an unsworn letter dated November 21, 2000 from Dr. Loomis. Dr. Gornet's affidavit mentions several alleged deficiencies in Davis's work, but it does not refer to Norton at all. Dr. Loomis similarly opined in his letter on Davis's alleged shortcomings, but he too failed to mention Norton.

Parties opposing a properly supported motion for summary judgment "may not rest upon the mere allegations" of their pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Because the Sommers failed to set forth any facts, material or otherwise, relevant to their claim against Norton, the district court properly granted his motion for summary judgment.

The Tennessee Court of Appeals in *Mabon v. Jackson-Madison County Gen. Hosp.*, 968 S.W.2d 826, 830 (Tenn. Ct. App. 1997), decided that the plaintiff's proposed expert did not have knowledge of the standard of care in the defendant's community or a similar one where he

> state[d] in his affidavit that he was familiar with the recognized standard of acceptable medical practice in an area such as Jackson, Tennessee and at a facility the size of Hospital. He further state[d] that the standard of care in Jackson and at Hospital would be comparable to the cities and facilities at which he has practiced medicine and is the same for New York [C]ity and other large cities and, in effect, is a national standard.

Finding "that his statement in his affidavit regarding the standard of care is premised on the national standard of care and not on the standard of care for [the defendant's community] or similar communities," the court rejected his testimony. *Id.; see also Robinson v. LeCorps*, 83 S.W.3d 718, 724 (Tenn. 2002) ("Our interpretation of the statute is consistent with prior Court of Appeals' decisions, including *Mabon v. Jackson-Madison County Gen. Hosp.*").

On the other hand, while conceding that the proposed expert's "testimony concerning the similarity of Lexington and Memphis is somewhat meager," the Tennessee Court of Appeals in *Wilson v. Patterson*, 73 S.W.3d 95, 105 (Tenn. Ct. App. 2001), found the testimony "barely sufficient to withstand attack at the summary judgment stage of the proceeding." The proposed expert in *Wilson* stated by affidavit that "[b]oth Lexington, Kentucky and Memphis, Tennessee are regional medical centers and are the locations of their state medical schools," and that he had "had the opportunity to review the depositions of and hear the testimony of numerous Memphis, Tennessee physicians on the recognized standard of care." *Id.* at 99, 100.

At the Rule 104 hearing, Dr. Gornet explained the basis for his opinion that St. Louis (where he practices and with whose

professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury . . . occurred." Tenn. Code Ann. § 29-26-115(a)(1). He was therefore unable to offer any evidence that was relevant to the Sommers' claims.

Much of the Sommers' argument about the exclusion of Dr. Gornet focuses on Tennessee Code § 29-26-115(b), which requires experts who testify in medical malpractice cases to be licensed in Tennessee or in a contiguous state. They argue both that the statute is unconstitutional and that its application is precluded by Rule 702 of the Federal Rules of Evidence. To the extent that these arguments have any applicability to this case, the Sixth Circuit has definitively rejected them. *Legg v. Chopra*, 256 F.3d 286, 291, 292 (6th Cir. 2002) ("In sum, Federal Rule of Evidence 601 dictates that the [sic] Tennessee's witness competency rule governs the admissibility of medical expert testimony. . . . [W]e hold that the district court did not err in applying Fed. R. Evid. 601 and Tenn. Code Ann. § 29-26-115(b) in its analysis.").

The applicability of these arguments, moreover, is dubious at best. Dr. Gornet practices in Missouri, which borders Tennessee. Section 29-26-115(b) therefore poses no barrier to his testimony, and the district court did not rely on that section. Rather, the district court determined that Dr. Gornet had no personal knowledge of the standard of care in Nashville or in a similar community. Breach of that particular standard of care must be proved in order for a plaintiff to prevail in a Tennessee medical malpractice claim. Tenn. Code Ann. § 29-26-115(a).

"[A]buse of discretion is the proper standard of review of a district court's evidentiary rulings." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997) (discussing the qualifications of experts); *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 214 F.3d 730, 738 (6th Cir. 2000) ("A district court's determinations of relevancy are subject to review for abuse of discretion.").

**B.    The district court did not err in denying the Sommers' motion to reconsider**

In their notice of appeal, the Sommers stated that they were appealing the denial of their motion to reconsider the award of summary judgment to Norton. They have not, however, presented any argument on this subject in their briefs. We therefore consider this issue as abandoned. *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) ("We normally decline to consider issues not raised in the appellant's opening brief.").

On the merits, moreover, the district court did not err. We typically review the denial of a motion to reconsider using the "abuse of discretion" standard, "but where reconsideration of summary judgment was sought, . . . a de novo review" is appropriate. *United States v. $515,060.42*, 152 F.3d 491, 497 (6th Cir. 1998). The Sommers did not present the district court with any reason to reconsider the grant of summary judgment. They did, however, attempt to offer as new evidence certain excerpts from Dr. Gornet's deposition, in which he opines that Norton's performance was negligent. But Dr. Gornet was the Sommers' witness, and they utterly failed to explain why his opinion on Norton's conduct was unavailable to them when they had earlier responded to Norton's motion for summary judgment.

A district court's refusal to consider evidence produced for the first time on a motion to reconsider will be reversed only if the refusal constitutes an abuse of discretion. *Hayes v. Norfolk S. Corp.*, No. 00-3876, 2001 WL 1631430, at *6 (6th Cir. Dec. 18, 2001) (unpublished table decision) (citing *Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 123 (6th Cir. 1982)). Given that the Sommers provided no reason why Dr. Gornet's opinion on Norton could not have been produced earlier, the district court did not abuse its discretion in refusing to consider the new evidence. Finally, for the reasons explained in Part II.D. below, Dr. Gornet was not competent to offer opinion evidence in this case regarding the applicable standard of care. Summary judgment for Norton would

therefore have been appropriate even if the Sommers had timely submitted Dr. Gornet's later opinions in their initial opposition to Norton's motion.

## C.  The district court did not err in excluding Dr. Loomis's expert testimony

The Sommers next claim that the district court erred in denying their motion to file a supplemental Rule 26 disclosure as to Dr. Loomis and in granting Davis's motion in limine to exclude Dr. Loomis's testimony. Both rulings were based on the Sommers' untimeliness in disclosing Dr. Loomis as an expert witness. Although the Sommers contend that "[b]y applying Tennessee law instead of the Federal Rules of Evidence the court improperly barred Dr. Loomis from testifying," this was not the basis of the district court's ruling. Instead, the district court relied on Rule 37 of the Federal Rules of Civil Procedure. Rule 37 provides in pertinent part as follows: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c). We will reverse a district court's invocation of Rule 37 sanctions only if we find an abuse of discretion. *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994).

After multiple extensions, the final expert-disclosure deadline was set for July 15, 2000. Yet the Sommers waited until February 26, 2001 to disclose Dr. Loomis as an expert witness. Their motion in the district court articulated no justification (much less a substantial one) for their untimeliness, nor have they put forward any justification on appeal. The Sommers assert generally that the defendants would not have been prejudiced by allowing Dr. Loomis to testify. Harmlessness, however, is the key under Rule 37, not prejudice. The advisory committee's note to Rule 37(c) "strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vance v. United States*, No. 98-

5488, 1999 WL 455435, at *5 (6th Cir. June 25, 1999) (unpublished table decision).

Nothing in the present case suggests that the failure to disclose Dr. Loomis in a timely manner was the result of an honest mistake. Nor did the defendants have sufficient knowledge of him or his opinions, since the first hint that he might have some involvement in the case came in the form of his unsworn letter that was filed months after the expert-disclosure deadline. We therefore conclude that the district court did not abuse its discretion in denying the Sommers' motion to file a supplemental Rule 26 disclosure.

Furthermore, the Sommers specifically waived any opposition to Davis's motion in limine to bar Dr. Loomis from testifying. The district court made the following comment on the status of the motions in limine at the May 7, 2001 pretrial conference: "Well, if there is no opposition filed, then I am inclined to grant the motions." Counsel for the Sommers responded: "Your Honor, the only one we really object to is the motion pertaining to Dr. Gornet's testimony." Under these circumstances, the Sommers, who disavowed opposition to the motion to exclude Loomis's testimony in the district court, cannot now assert error regarding the grant of the motion. *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 79 (2d Cir. 1999) (holding that a party could not press a particular contention on appeal after "specifically inform[ing]" the district court that it was not so contending); *see Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 544 (6th Cir. 1996) (holding that, absent exceptional circumstances, "failure to raise [a particular] issue in the district court precludes argument in that regard on appeal").

## D.  The district court did not err in excluding the testimony of Dr. Gornet

The Sommers' primary contention on appeal is that the district court erred in excluding Dr. Gornet's testimony. Dr. Gornet was barred from offering expert testimony because the district court concluded that, as a matter of law, he did not have knowledge of "the recognized standard of acceptable