**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Darryl GREEN, Defendant–Appellant.**

**No. 02–3811.**

United States Court of Appeals, Sixth Circuit.

June 9, 2004.

Robyn Jones Hahnert, U.S. Attorney's Office, Columbus, OH, for Plaintiff–Appellee.

Kirk A. McVay, Columbus, OH, for Defendant–Appellant.

BEFORE: BOGGS, Chief Circuit Judge; KENNEDY, Circuit Judge; and RUSSELL, District Judge.[1]

KENNEDY, Circuit Judge.

Darryl Green ("defendant") challenges his sentence on the ground that the district court clearly erred in determining the amount of drugs attributable to him for purposes of determining his base offense level under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1.[2] For the reasons explained below, we AFFIRM defendant's sentence.

## I.  Background

Pursuant to a written plea agreement, defendant pleaded guilty to the following five counts: Count 1: conspiracy to distribute and possess with intent to distribute over 5 kilograms of cocaine in violation of 21 U.S.C. § 846; Count 2: possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2; Counts 3 and 15: possession with intent to distribute more than 100 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i) and 18 U.S.C. § 2; and Count 4: conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 846.

U.S.S.G. § 2D1.1, which pertains to offenses involving drugs, governs the determination of defendant's base offense level

---

1. The Honorable Thomas B. Russell. United States District Judge for the Western District of Kentucky, sitting by designation.

2. Sentencing calculations relied upon the 2001 edition of the United States Sentencing Guidelines Manual.

for each of his offenses under 21 U.S.C. §§ 846 and 841. Because the offense level for each of these offenses is largely based upon the quantity of the substance involved, U.S.S.G. § 3D1.2(d) requires that all of the counts be grouped together into a single group to determine a single base offense level. The offense level applicable to this single group is that which corresponds to the aggregated quantity of the substances. U.S.S.G. § 3D1.3(b). Under U.S.S.G. § 2D1.1, the quantities of the different controlled substances are converted to their marijuana equivalent and then combined to obtain a single offense level. U.S.S.G. § 2D1.1, comment. (n. 10). The government sought to attribute to defendant, as relevant conduct for purposes of determining his base offense level, only those quantities of contraband with which he was directly involved. *See* U.S.S.G. § 1B1.3(a)(1)(A); U.S.S.G. § 1B1.3, comment. (n. 2).

According to the plea agreement, the parties agreed that the relevant conduct attributable to defendant, under U.S.S.G. § 2D1.1, was at least 5 kilograms of cocaine regarding Count 1 and at least 100 grams of heroin regarding Counts 3 and 15. The parties had reached no agreement as to the amount of heroin and marijuana attributable to defendant regarding Counts 2 and 4, respectively. Defendant reserved the right to challenge any relevant conduct determination beyond 5 kilograms of cocaine and 100 grams of heroin. According to both the Pre-sentence Investigation Report and the government, defendant was directly involved with 234 grams of heroin, 70 pounds of marijuana, and 75.923 kilograms of cocaine. Based upon the conversion of these amounts to 15,450.35 kilograms of marijuana, defendant's base offense level would be 36. Defendant objected to this base offense level and the determination of the relevant conduct underlying it. According to defen-

dant, he was directly involved with 107 grams of heroin, 30 pounds of marijuana, and no more than 13 kilograms of cocaine. Based upon the conversion of these quantities to 2,720.6 kilograms of marijuana, defendant's base offense level would be 32.

The district court held an evidentiary hearing on the calculation of defendant's relevant conduct. The government presented as witnesses Detective Melissa Kallstrom ("Detective Kallstrom") of the Columbus, Ohio. Police Department, and co-conspirators Robert Santana ("Santana") and Martin Castillo ("Castillo"). Defendant declined to present any evidence. In a comprehensive order, the district court determined that defendant "was directly involved in the receipt, possession[,] or distribution of 58 kilograms of cocaine, 180 grams of heroin, and 30 pounds of marijuana." After aggregating these quantities to 11,793.608 kilograms of marijuana, under U.S.S.G. § 2D1.1, the district court determined defendant's base offense level to be 36. After applying all of the relevant sentencing factors, the district court ultimately arrived at a Guidelines' range in which it sentenced defendant to 160 months of imprisonment followed by 5 years of supervised release.

Defendant now appeals his sentence on the ground that the district court clearly erred in determining the amount of drugs properly attributable to him as relevant conduct for purposes of determining his base offense level under U.S.S.G. § 2D1.1. Specifically, defendant contends that a preponderance of the evidence demonstrates that only 58 kilograms of cocaine, 107 grams of heroin, and 30 pounds of marijuana are properly attributable to him. Because the district court agreed with defendant that only 30 pounds of marijuana are properly attributable to him, defendant, thus, cannot be challenging the district court's determination of the relevant mari-

juana quantity. Moreover, while defendant purports to be challenging the district court's determination of the quantity of heroin that is properly attributable to him, defendant has abandoned this specific issue on appeal by failing to present any meaningful argument on it in his brief. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir.2003) (holding that a litigant may abandon an issue on appeal by not presenting any argument on it in his briefs). Rather, defendant's argument in his brief squarely addresses only the district court's determination of the quantity of cocaine that is properly attributable to him. Therefore, we will confine our review to the district court's determination of the relevant cocaine quantity.

## II. Analysis

We review for clear error a district court's factual determination of the quantity of drugs attributable to a particular defendant under U.S.S.G. § 2D1.1. *United States v. Walton*, 908 F.2d 1289, 1300–01 (6th Cir.1990). "Where the amount is uncertain, the district court is encouraged to 'err on the side of caution' and only hold the defendant responsible for that quantity of drugs for which 'the defendant is more likely than not *actually responsible*.'" *United States v. Baro*, 15 F.3d 563, 569 (6th Cir.1994) (holding that a preponderance of the evidence must support a calculation of the amount of drugs involved in a crime) (quoting *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir.1990)).

■ Defendant argues that the district court committed clear error when it relied upon Santana's and Castillo's testimony in determining the quantity of cocaine that is properly attributable to defendant. Defendant maintains that the requisite preponderance of the evidence demonstrates that only eleven kilograms of cocaine are attributable to defendant, not fifty-eight

kilograms of cocaine. First, defendant underscores that both of these co-conspirators received a reduction in their sentences in exchange for their testimony against defendant. However, the district court found defendant's "generic credibility challenge unpersuasive." In questioning Santana's and Castillo's credibility as well as defendant's, the district court observed: "All are convicted felons. All have something to gain ... [and][a]ll have something to lose." The court further found:

> [T]he nearly identical, detailed explanations of each transaction by Santana and ... Castillo, especially as supplemented with testimony from ... Detective Kallstrom, enhance the[ir] credibility.... Further, the timing of their cooperation lends additional credibility to their statements.... Castillo provided a statement three months before Santana began cooperating with the government.... [A]ll of the information presented ... during the hearing was provided to the government prior to Santana's plea agreement. Additionally, the government represented that it has not shared either Santana's or ... Castillo's statements with any other co-defendant.... [B]oth Santana and ... Castillo are extremely familiar with defendant [and offered personal details about defendant].... Many of these details were corroborated by Detective Kallstrom.

The district court concluded that, "although ... [it] agrees that Santana's and ... Castillo's testimony should be viewed with skepticism, this skepticism is tempered by the congruence of the co[-]conspirators' testimony, Detective Kallstrom's testimony, and the numerous details provided by each witnesses." Thus, the district court, while fully aware of Santana's and Castillo's cooperation agreements with the government, weighed that risk of bias

against the reliability of their testimony, as independently corroborated, and found them generally credible. To the extent that defendant invites this court to set aside the district court's general credibility determinations, his cursory challenge to those determinations fails to provide a persuasive ground upon which to do so. *See Peveler v. United States,* 269 F.3d 693, 702 (6th Cir.2001) ("We are generally reluctant to set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness[es] on the stand and [to] assess ... [their] demeanor.").

■ Second, defendant argues that Santana's and Castillo's testimony regarding a shipment of fifty kilograms of cocaine from Edwin Soto ("Soto") materially differed. Santana testified that Julio Nunez supplied fifty kilograms of cocaine, in packages split lengthwise, to Soto, whose carrier then delivered that cocaine to Santana. Santana testified that, in total, he dispersed thirty to thirty-five kilograms of cocaine from this delivery to defendant. Castillo testified, however, that, although he had no personal knowledge of this delivery as he was out of the country at the time, he had heard from an individual named "Moises" that the shipment had come from Soto, Pin–Pin, and El Rubio, and that the entire shipment went to defendant. However, as the government correctly notes. Detective Kallstrom established that an individual named Yoberto Nunez was an associate of Edwin Soto and used the nickname "El Rubio." Thus, both Castillo and Santana refer to at least two of the same people involved in the transaction—Soto and Nunez, a.k.a. "El Rubio." Moreover, as the district court aptly found. Santana provided "a detailed description of the source of the cocaine, the transportation of the cocaine, how the cocaine was packaged, the location where it was delivered, prices paid by defendant, timing of the payments,

and defendant's concerns about the packaging of the cocaine." The district court properly found that, even if Castillo's testimony were insufficient evidence in itself due to his lack of personal knowledge, it, nevertheless, corroborates Santana's testimony. Erring on the side of caution, the district court attributed thirty kilograms of cocaine from this transaction to defendant. The district court did not clearly err in so finding.

Third, defendant argues that Santana's and Castillo's testimony regarding other cocaine shipments—those which Soto supplied and which Castillo delivered to defendant—materially differed. Santana recounted two to three such transactions involving three to four kilograms of cocaine each. Castillo recounted two to three transactions involving two and a half, three, four, five, or seven kilograms of cocaine. Both Santana and Castillo testified that defendant received all of the cocaine from these deliveries. The district court noted that both Santana and Castillo identified a similar number of transactions involving similar quantities of cocaine. Erring on the side of caution, the court attributed five kilograms of cocaine from these shipments to defendant. Presumably, the court did so using the lowest number of transactions recounted—two—and the lowest quantity of cocaine recounted—two-and-a-half kilograms. The district court did not clearly err in so finding.

Fourth, defendant argues that Santana's and Castillo's testimony regarding cocaine shipments from New York sources to defendant materially differed. Castillo recounted "about three trips" involving quantities of cocaine ranging from, at the least, two-and-a-half to three kilograms and, at the most, seven kilograms. Santana recounted "several" deliveries of between four and five kilograms of cocaine

and one of seven kilograms of cocaine. Santana also recounted one delivery involving a "nice amount" of cocaine, approximately ten to fifteen kilograms. Defendant also notes that Castillo's testimony regarding the cocaine shipments from Boston and those from New York are "interestingly" similar, and that this similarity indicates that Castillo had clearly confused the transactions. However, as the court correctly noted, both Santana and Castillo recalled one delivery of seven kilograms of cocaine and two deliveries of smaller amounts of cocaine. Erring on the side of caution, the district court attributed one seven-kilogram delivery to defendant and two two-and-a-half kilogram deliveries to defendant. The court declined to attribute to defendant the ten-to-fifteen kilogram delivery to which Santana testified because Castillo did not corroborate this quantity and Santana offered no other details regarding the shipment. The district court did not clearly err in attributing to defendant twelve kilograms of cocaine from these New York shipments.

▪ Fifth, defendant contends that the fifty-eight kilograms of cocaine allegedly attributable to defendant is a gross exaggeration because the government, during the course of its investigation of the drug-trafficking conspiracy and despite all of its resources, recovered only fifteen kilograms of cocaine, only five kilograms of which are attributable to defendant. The government's lack of possession of this cocaine, however, does little to negate the district court's finding to attribute fifty-eight kilograms of cocaine to defendant,[3] since suffi-

cient evidence exists in the record for the district court to properly make that finding. In sum, the district court did not commit clear error in determining that defendant "was directly involved in the receipt, possession[,] or distribution of 58 kilograms of cocaine." Likewise, pursuant to U.S.S.G. § 2D1.1, the district court did not err in aggregating this quantity of cocaine with the relevant quantities of heroin and marijuana to arrive at a base offense level of 36.

For the preceding reasons, we AFFIRM defendant's sentence.

---

**3.** While the district court's finding to attribute fifty-eight kilograms of cocaine to defendant was based upon eleven kilograms of cocaine from Houston sources—in addition to the thirty-five and twelve kilograms of cocaine from Soto and New York, respectively—, defendant has abandoned any challenge to this eleven-kilogram finding by failing to present any argument on it in his brief. *See Sommer,* 317 F.3d at 691. In any event, for the reasons explained in the district court's order, a preponderance of the evidence exists to sustain this eleven-kilogram determination, which, we note, was based upon a conservative estimate.