RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0013p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

CHAPPELLE GALES, Administrator ad litem of the
estate of Ellen Ranson, on behalf of the wrongful
death beneficiaries of Ellen Ranson,

          *Plaintiff-Appellant*,

    *v.*

ALLENBROOKE NURSING AND REHABILITATION
CENTER, LLC,

          *Defendant-Appellee*.

No. 23-5527

───────────────

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:22-cv-02220—Jon Phipps McCalla, District Judge.

Decided and Filed:  January 22, 2024

Before:  GRIFFIN, BUSH, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Phillip S. Georges, Brett Windrow, Nashville, Tennessee, for Appellant.  W. Davis
Frye, Clay Gunn, BUTLER SNOW LLP, Ridgeland, Mississippi, Marguerite McGowan
Stringer, BUTLER SNOW LLP, Memphis, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

    CHAD A. READLER, Circuit Judge.  Chappelle Gales's mother passed away while
residing in a nursing home.  Gales attributes her mother's death to inadequate care, so she sued
the facility for medical malpractice under state law.  Gales hired an expert witness to testify on
her behalf.  But the district court excluded the expert's testimony due to his unfamiliarity with

local medical standards.  And without expert testimony to support her claims, the district court held, Gales's suit could not proceed.  Finding no abuse of discretion by the district court, we now affirm.

## I.

For the two years leading up to her death, Ellen Ranson lived in hospice care at Allenbrooke Nursing and Rehabilitation Center in Memphis, Tennessee.  Over her life, Ranson suffered from a number of medical complications, including dementia, schizophrenia, strokes, and coronary artery disease.  After her admission to Allenbrooke in December 2018, she experienced areas of new or worsening skin breakdown, with complications that included multiple arterial ulcers.  Allenbrooke staff and an independent wound care specialist successfully treated some of Ranson's wounds.  But she later developed an ulcer that eventually caused her left foot to become gangrenous and necrotic.  She passed away in November 2020.  Her death certificate indicates that she died of cerebrovascular disease.

Chappelle Gales, Ranson's daughter and administrator of her estate, sued Allenbrooke in Tennessee state court alleging that the facility provided inadequate medical care.  Allenbrooke removed the case to federal court on the basis of diversity jurisdiction.  To support her medical malpractice claims, Gales retained Dr. Edwin Polverino, a family practitioner in Virginia, as an expert witness.  After deposing Dr. Polverino, Allenbrooke moved to exclude his testimony and for summary judgment.  According to Allenbrooke, Dr. Polverino was unfamiliar with the local standard of medical care in Memphis, meaning he should not be allowed to testify as an expert.  And without Dr. Polverino's testimony, Allenbrooke added, Gales could not establish the essential elements of a state law medical malpractice claim.  The district court granted both motions and entered judgment in favor of Allenbrooke.  Gales appealed.

## II.

Gales faults the district court for preventing Dr. Polverino from serving as an expert witness.  We review the exclusion of a proffered expert for an abuse of discretion.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  That is true "even when," as here, "that decision results in the entry of summary judgment."  *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 248

(6th Cir. 2001); *Finley v. Mora*, No. 22-1886, 2023 WL 7550447, at \*2 (6th Cir. Nov. 14, 2023). An abuse of discretion occurs if the district court (1) misunderstood the law, (2) relied on clearly erroneous factual findings, or (3) made a clear error of judgment. *United States v. Chavez*, 951 F.3d 349, 358 (6th Cir. 2020).

At bottom, today's case turns on an issue of state medical malpractice law. For medical malpractice actions, the Tennessee Healthcare Liability Act imposes a "locality rule." *Shipley v. Williams*, 350, 352 S.W.3d 527 (Tenn. 2011) (citing Tenn. Code. Ann. § 29-26-115(a)(1) (West 2023)). By its terms, the rule requires a plaintiff, as part of her affirmative case, to prove the "recognized standard of acceptable professional practice . . . in the community in which the defendant practices or in a similar community." § 29-26-115(a)(1). A defendant, in turn, is liable if it breaches this local standard of care and proximately causes a plaintiff's injury. § 29-26-115(a)(2), (3). Generally, a plaintiff must provide expert testimony to establish the community standard of care. *Shipley*, 350 S.W.3d at 538.

So how does a federal court go about honoring this state law requirement? Turn to Federal Rule of Evidence 702, which governs the admissibility of expert testimony in federal court. Rule 702 requires a district court to determine whether a proffered expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In exercising this gatekeeping role, a district court, after concluding that the witness is qualified to testify as an expert, must evaluate whether the witness will offer an opinion that will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also United States v. Cunningham*, 679 F.3d 355, 379–80 (6th Cir. 2012); 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6264.2 (2d ed.) (noting that district courts will disqualify a witness under Rule 702 when there is no reasonable expectation that the witness's background or experience will help the trier of fact).

Here, Rule 702 works in tandem with Tennessee's locality rule for testifying experts. *See* Tenn. Code. Ann. § 29-26-115(a); *Legg v. Chopra*, 286 F.3d 286, 291–92 (6th Cir. 2002) (holding that a federal court must assess whether a proffered expert satisfies Rule 702 to provide expert testimony in a Tennessee malpractice suit). Tennessee's locality rule frames the relevant

issues in a medical malpractice suit:  it tasks the trier of fact with determining whether a defendant breached a local standard of care.  *See* § 29-26-115(a).  Rule 702, in turn, requires a district court to assess whether a qualified expert's testimony will help the fact finder understand and evaluate the local standard of care and how it applies to the facts of a medical malpractice action.  *See West v. United States*, 502 F. Supp. 3d 1243, 1252–53 (M.D. Tenn. 2020) ("[T]he requirements of [§ 29-26-115] combine with the requirement of [Rule 702] that expert testimony must 'help the trier of fact.'" (citation omitted)).  So considering Tennessee law, a witness may testify as an expert if he is familiar with the local standard of care (or the standard of care of a similar community).  Taking all of this together, a proffered witness in a Tennessee medical malpractice action who is unfamiliar with the relevant medical standards cannot testify as an expert because his opinion will not help the fact finder determine a fact at issue in the case.  *See Sommer v. Davis*, 317 F.3d 686, 695 (6th Cir. 2003).  Our task, then, is to assess whether the district court abused its discretion in concluding that Dr. Polverino would not help the trier of fact in understanding the standard of care in Memphis or a similar community.

To our eye, no abuse of discretion occurred.  In the district court, Gales argued that Dr. Polverino could testify because he was familiar with a national standard of care.  R.51 PageID 526 ("Dr. Polverino meets the requirements as set forth in Tenn. Code Ann. Sec. 29-26-115(a) and . . .  is familiar with the standard of care, which is a national standard . . . ."); *see also id.* at PageID 521 ("In this case, the issue at hand is [the] national standard . . . .").  There was no need for Dr. Polverino to study the local standard of care, Gales maintained, because, as Dr. Polverino stated in his deposition, "there's a certain baseline standard of care that applies throughout the country."  *Id.* at 520–521 (emphasis omitted).  But the problem for Gales is that Tennessee law says otherwise.  It demands that a purported medical expert possess more than familiarity with "a national standard of care in medical malpractice actions."  *Shipley*, 350 S.W.3d at 553; *see also id.* (explaining that litigants may introduce evidence of a national standard of care "[o]nly after a medical expert witness has sufficiently established his or her familiarity with the standard of care in the same or similar community as the defendant"); *Sommer*, 317 F.3d at 694–95 (applying Tennessee law and rejecting a national standard of care); *Brown v. United States*, 355 F. App'x 901, 906 (6th Cir. 2009) (collecting cases).  Nor can expert testimony in a Tennessee malpractice

suit be based on a regional or statewide standard of care.  *Kenyon v. Handal*, 122 S.W.3d 743, 762 (Tenn. Ct. App. 2003).

Gales failed to establish Dr. Polverino's familiarity with the standard of medical care in Memphis.  This is not a close call.  When asked about the issue during his deposition, Dr. Polverino bluntly explained, "I haven't looked at Memphis."  R.51-5 PageID 638.  He denied traveling to Memphis within the last ten years or ever treating patients there.  He stated that he was unfamiliar with the city's population, its demographic makeup, and the number of nursing homes and other medical facilities in the area.  And he denied knowing any medical professionals who practice medicine in a Memphis nursing home.  He justified his inexperience with local standards on the ground that the Memphis medical community was the same "as any facility in the United States."  *Id.* at PageID 639.  Respectfully, we cannot elevate that view over the one codified by the Tennessee General Assembly.  Nor, in view of Dr. Polverino's total lack of research into the standard of care in Memphis, can we say that the district court made a clear error in judgment by excluding Dr. Polverino's participation as an expert witness.

Gales responds by insisting that Dr. Polverino was familiar with the "standard of care provided at nursing homes and rehabilitation centers in Tennessee," as indicated in his expert report.  Appellant Br. at 5 (emphasis omitted).  Setting aside the fact that, as just explained, Tennessee malpractice actions do not turn on statewide standards of practice, we cannot accept a bare assertion in an expert report.  After all, Rule 702 requires more than simply "taking the expert's word for it."  *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment (citation omitted); *accord Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 554 (Tenn. 2006) (noting that an expert's "bare assertion of familiarity" with a local standard of care is insufficient).  And when we examine the record, the weight of Dr. Polverino's deposition testimony undercuts Gales's contention.  There, Dr. Polverino denied having reviewed minimum care standards not only in Memphis and western Tennessee, but also Tennessee as a whole.  Dr. Polverino simply did not engage on these matters in the ways required by federal and state law.

Nor do we agree with Gales that Dr. Polverino demonstrated his familiarity with a medical community similar to Memphis.  As Gales did not raise this point in the district court, it is likely forfeited.  *See United States v. Moore*, 999 F.3d 993, 998–99 (6th Cir. 2021).  Either

way, the argument lacks merit. Gales is correct that a plaintiff can satisfy the locality rule by providing expert testimony establishing the standard of care in a community similar to the community in which the defendant practices. *See* § 29-26-115(a). The statute does not go on to define what constitutes a "similar community" for the purposes of the act, but it is clear that Dr. Polverino did not demonstrate his familiarity with a community similar to Memphis. Dr. Polverino stated that, based on his experience, he was familiar with the standards of care in two Virginia communities, Roanoke and Salem. But he never articulated how these communities are similar to Memphis. And given his lack of familiarity with Memphis, it is difficult to see how Dr. Polverino could do so. *See Williams*, 193 S.W.3d at 554 (noting that an expert must provide "a basis for finding that the standard of care in Memphis is similar to that in the community" in which the expert practices).

\* \* \* \* \*

All things considered, the district court did not abuse its discretion in excluding Dr. Polverino's testimony. In turn, it likewise properly granted summary judgment to Allenbrooke. Under Tennessee law, a "plaintiff in a malpractice action . . . must produce expert medical evidence to establish the standard of professional care in the community in which a defendant practices or in a similar community." *Robinson v. LeCorps*, 83 S.W.3d 718, 724 (Tenn. 2002). Here, Gales failed to proffer admissible medical expert testimony regarding the recognized standard of professional care in Memphis or a similar community. Accordingly, Allenbrooke was entitled to summary judgment. We affirm.