NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0476n.06

No. 25-5073

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 20, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| MIKHAILA LENOIR, | ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| SHELBY COUNTY HEALTH CARE CORPORATION, dba Regional One Health, | ) ) | OPINION |
| Defendant-Appellee. | ) ) | |

Before: MOORE, CLAY, and WHITE, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Mikhaila Lenoir appeals the district court's order entering judgment for Defendant Shelby County Health Care Corporation *sua sponte*, in this diversity action alleging medical malpractice claims under Tennessee Code Annotated section 29–26–115(a) against Defendant. For the reasons set forth below, we **AFFIRM** the district court's order entering summary judgment in favor of Defendant.

## I. BACKGROUND

### A. Factual Background

Plaintiff Mikhaila Lenoir ("Lenoir") became a quadriplegic following an automobile accident on October 8, 2021. She was treated for her injuries at Defendant Shelby County Health Care Corporation's ("SCHCC") Regional One Health facility in Memphis, Tennessee between

October 8, 2021, and January 21, 2022.[1]  Plaintiff alleges that while she was a patient at Regional

One Health, Defendant committed medical malpractice by:

> failing to properly turn Plaintiff in her bed, failing to restrain and attend to Plaintiff while sitting in a chair, failing to change Plaintiff Lenoir's diaper in a reasonable amount of time, failing to properly clean and treat Plaintiff's bed/pressure sores, failing to place Plaintiff's call device, performing medical procedures on Plaintiff without her informed consent and in blatant disregard for her clearly expressed non-consent, and by severely limiting Plaintiff's family visitation.

Compl., R. 1, Page ID #5.  Plaintiff claims that as a result of her treatment she has suffered from

"bed/pressures sores that increased in size, depth and severity," "bruises and contusions" from

falling from a chair, respiratory distress, mental distress, emotional distress, physical distress, fear

of isolation, fear of other mistreatment, pain and suffering, additional medical expenses and costs,

and delay in rehabilitation.  *Id.* at Page ID #5–6.

Tennessee Code Annotated section 29–26–115(a) sets forth the three elements Plaintiff had

to prove to succeed in her medical malpractice case.  First, Plaintiff must demonstrate "[t]he

recognized standard of acceptable professional practice in the profession and the specialty thereof,

if any, that [Defendant] practices in the community in which [Defendant] practices or in a

similar community at the time the alleged injury or wrongful action occurred."  Tenn. Code Ann.

§ 29–26–115(a)(1).  Second, Plaintiff must show "[t]hat [Defendant] acted with less than or failed

to act with ordinary and reasonable care in accordance with such standard."  *Id.* § 29–26–115(a)(2).

Third, Plaintiff must show that "[a]s a proximate result of [Defendant's] negligent act or omission,

[she] suffered injuries which would not otherwise have occurred."  *Id.* § 29–26–115(a)(3).  Expert

testimony is required for Plaintiff to establish each of the elements in this case.  *Shipley v. Williams*,

---

[1] Defendant SCHCC does business as Regional One Health.

350 S.W.3d 527, 537 (Tenn. 2011). Under Tennessee Code Annotated section 29–26–115(b), an expert is qualified to testify as to these elements if she is "licensed to practice in [Tennessee] or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred."

To prove the elements of her Tennessee medical malpractice claims, Plaintiff presented Richisa Salazar M.D. as her proposed expert witness. Dr. Salazar received her Doctorate of Medicine and Masters of Science in Public Health from Meharry Medical College in Nashville, Tennessee in 2008 and 2003, respectively. She also participated in the Geriatrics Club at Meharry. Thereafter, she completed her medical residency in emergency medicine at the University of Texas Southwestern in Dallas, Texas. Since 2011, Dr. Salazar worked as an emergency medicine physician in various cities in Mississippi, Georgia, and Texas, and is licensed to practice in those states. Around the time of Plaintiff's injury, Dr. Salazar spent most of the year working at the Piedmont hospitals in Atlanta, Georgia. As an emergency medicine physician, Dr. Salazar became experienced in treating the pressure injuries and wounds of bedbound patients.

Dr. Salazar submitted an expert report opining on the three elements of Plaintiff's Tennessee medical malpractice claims. In addition to her work experience, Dr. Salazar relied on her review of Plaintiff's treatment and hospitalization records from Regional One Health and several medical articles on pressure-induced skin and soft tissue injuries to opine on the standard of care Defendant owed to Plaintiff regarding the prevention, detection, and treatment of pressure ulcers.

On June 28, 2024, Defendant deposed Dr. Salazar in her capacity as Plaintiff's proposed expert witness. During this deposition, Dr. Salazar acknowledged that she had never treated patients in Memphis, Tennessee. She also disclaimed knowledge of the population, demographics, and socioeconomic makeup of Memphis. She was also uncertain as to the number of hospitals in Memphis or if there were any medical schools or teaching hospitals in the city. Nonetheless, Dr. Salazar claimed Memphis was similar to Jackson, Mississippi—where she was "originally from"—due to their comparable population size and crime rates. Salazar Dep., R. 31-3, Page ID #248–49. When pressed on what standard of care she had applied in her opinion, Dr. Salazar stated "[n]ationwide." *Id.* at Page ID #257.

On September 5, 2024, Plaintiff submitted a supplemental affidavit by Dr. Salazar in which Dr. Salazar claimed familiarity with the Memphis, Tennessee area from attending medical school in Tennessee, visiting family in Memphis throughout her life, and from her practice in Atlanta, Georgia, which she opined is "very similar [to Memphis] . . . [in] size, population, medical facilities, and access to medical information." Salazar Affidavit, R. 36-2, Page ID #336. She also highlighted her current work as an emergency physician at Piedmont Eastside Medical Center, "a 310-bed multi-campus system of care that serves the Atlanta, Georgia area." *Id.*

## B. Procedural History

On March 15, 2023, Plaintiff filed a complaint in the Western District of Tennessee against Defendant. Plaintiff alleged Defendant and its employees breached the applicable standard of care owed to her while she was a patient at Regional One Health. Defendant first moved, pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure, to dismiss Plaintiff's "informed consent" claims, which involved allegations that Defendants "perform[ed] medical procedures on Plaintiff without her informed consent and in blatant disregard for her clearly expressed non consent."

Compl., R. 1, Page ID #6. Plaintiff conceded that Tennessee caselaw did not impose a duty to obtain informed consent upon Defendant, so the district court granted Defendant's motion to dismiss.

Defendant next moved to exclude the opinions of Plaintiff's expert witness, Richisa Salazar M.D., pursuant to Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Tennessee Code Annotated section 29–26–115 on the grounds that Dr. Salazar (1) was not licensed in a profession or specialty that would make her testimony relevant; (2) did not satisfy Tennessee's locality rule; and (3) improperly relied on a national standard of care. On December 16, 2024, the district court granted Defendant's motion. The district court held that, while Dr. Salazar was licensed in a profession or specialty that would make her testimony relevant, she did not satisfy Tennessee's locality rule, which requires that Dr. Salazar demonstrate familiarity with Defendant's medical community or a similar medical community. The district court declined to reach the question of whether Dr. Salazar improperly relied on a national standard of care.

Having excluded Dr. Salazar's opinions, the district court ordered "Plaintiff to show cause why judgment should not be entered in Defendant's favor." Order Granting Mot. to Exclude; Order to Show Cause, R. 53, Page ID #411. The order instructed Plaintiff to "file notice with the Court explaining how she intends to proceed with this action—or indicating that she does not intend to proceed—within 14 days of the date of this Order's entry." *Id.* Instead of requesting leave to file a motion to substitute another expert, Plaintiff advised that, because of the exclusion of Dr. Salazar's testimony, she could not satisfy Tennessee's locality rule and would "not [be] able to proceed with this case." Plaintiff's Mem. to Show Cause in Response to the Court's Order to Show Cause, R. 54, Page ID #413. The district court then dismissed this case with prejudice and

entered judgment for Defendant. Plaintiff now appeals the district court's decision to exclude Dr. Salazar's opinions and enter judgment for Defendant.

## II. DISCUSSION

### A. Standard of Review

"When a district court grants summary judgment sua sponte, its decision is subject to two separate standards of review." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 931 (6th Cir. 2000). "The substance of the district court's decision is reviewed de novo under the normal standards for summary judgment." *Id.* "The district court's procedural decision to enter summary judgment sua sponte . . . is reviewed for abuse of discretion." *Id.* "[A] district court may enter summary judgment sua sponte in certain limited circumstances, 'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.'" *Id.* (quoting *Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998)); *see also* Fed. R. Civ. P. § 56(f)(1) ("After giving notice and a reasonable time to respond, the court may: grant summary judgment for a nonmovant."). "The clearly established rule in this circuit is that a district court must afford the party against whom *sua sponte* summary judgment is to be entered ten-days notice and an adequate opportunity to respond." *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984). "The party against whom *sua sponte* summary judgment has improperly been entered must, however, demonstrate prejudice in order to obtain relief on appeal." *Id.* "Notice and opportunity are determined from the totality of the proceedings below." *Advanced Concrete Tools, Inc. v. Beach*, 525 F. App'x 317, 320 (6th Cir. 2013) (quoting *Aubin Indus., Inc. v. Smith*, 321 F. App'x 422, 423 (6th Cir. 2008)).

A district court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hardyman v. Norfolk & W. Ry. Co.*,

243 F.3d 255, 258 (6th Cir. 2001). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 915 (6th Cir. 2009) (quoting *Brown v. Raymond Corp.*, 432 F.3d 640, 647 (6th Cir. 2005)) (citation modified).

## B. Analysis

### 1. Exclusion of Dr. Salazar as Plaintiff's Expert Witness

Plaintiff argues that the district court erred in excluding her expert's testimony pursuant to Federal Rule of Evidence 702 and Tennessee Code Annotated section 29–26–115(a)(1). Rule 702 tasks the district court with determining whether "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 580. If the witness is qualified to testify as an expert, the district court must then determine whether the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

As for section 29–26–115(a)(1), it requires a claimant in a Tennessee medical malpractice action to prove "[t]he recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices *in the community in which the defendant practices or in a similar community* at the time the alleged injury or wrongful action occurred." Tenn. Code Ann. § 29–26–115(a)(1) (emphasis added). This is known as Tennessee's "locality rule." *See Shipley*, 350 S.W.3d at 537–38, 552. "Under this rule, a medical expert in a [Tennessee medical malpractice action] must demonstrate that he or she is familiar with either the standard in the community where the defendant practices or a 'similar community.'" *Id.* at 538 (quoting § 29–26–115(a)(1)).

A brief aside on Tennessee's locality rule is warranted. Prior to 1975, Tennessee courts applied a common law "strict locality" rule, which required a testifying expert to have familiarity

with the standard of care in the defendant's medical community. *See Shipley*, 350 S.W.3d at 537. This was premised on the now-abandoned assumption "that doctors in an urban community had more access to medical resources and opportunities than doctors in rural areas." *Id.* (citing *Sutphin v. Platt*, 720 S.W.2d 455, 457 (Tenn. 1986)). In 1975, the Tennessee legislature relaxed this rule by allowing a testifying expert to alternatively have familiarity with a community similar to the defendant's medical community. *Id.* at 538. By adopting the current "same or similar" locality rule, the Tennessee legislature "somewhat broadened [the] definition of the geographic component to the medical standard of care." *Id.* (quoting *Sutphin*, 720 S.W.2d at 457).

Indeed, the current locality rule only adds a geographic burden to a plaintiff's Tennessee medical malpractice claim. This additional burden has been described by some Tennessee courts as "ha[ving] long since outlived its usefulness." *Carpenter v. Klepper*, 205 S.W.3d 474, 484 (Tenn. Ct. App. 2006). Many Tennessee courts have called on the Tennessee legislature to do away with the locality rule altogether. *Id.* (imploring "the [Tennessee] Legislature to relegate the 'similar locality rule' to the 'ash heap' of history"); *Robinson v. LeCorps*, 83 S.W.3d 718, 723–24 (Tenn. 2002) ("[W]e encourage the General Assembly to reconsider the current statutory framework of the locality rule."). The basis for these calls is that the locality rule has little to do with the applicable standard of medical care and all to do with the expert's familiarity with the defendant's medical community or a similar one. Nonetheless, the parties agree that this is the uncontested state of the law. As such, we must apply the locality rule.

In *Gales on behalf of Ranson v. Allenbrooke Nursing and Rehabilitation Center, LLC*, we detailed the relationship between Rule 702 and Tennessee's locality rule. 91 F.4th 433, 435–36 (6th Cir. 2024). The two "work[] in tandem:" Tennessee's locality rule "tasks the trier of fact with determining whether a defendant breached a local standard of care" while Rule 702 "requires a

district court to assess whether a qualified expert's testimony will help the fact finder understand and evaluate the local standard of care and how it applies to the facts of a medical malpractice action." *Id.* at 436. Put succinctly, "a proffered witness in a Tennessee medical malpractice action who is unfamiliar with the relevant medical standards cannot testify as an expert because his opinion will not help the fact finder determine a fact at issue in the case." *Id.* (citing *Sommer v. Davis*, 317 F.3d 686, 695 (6th Cir. 2003)).

Plaintiff raises two arguments on appeal that Dr. Salazar did in fact satisfy Tennessee's locality rule. First, Plaintiff contends that Dr. Salazar was familiar with the applicable medical standard of care in the Memphis, Tennessee community. Second, Plaintiff avers that Dr. Salazar was familiar with the applicable medical standard of care in Atlanta, Georgia, a community Dr. Salazar claims is similar to Memphis. Because we must apply the locality rule and are not entitled to disturb it, we affirm the district court's order entering summary judgment for Defendant.

### a. *Dr. Salazar Did Not Demonstrate Familiarity with the Memphis, Tennessee Community and the Applicable Standard of Care*

To satisfy Tennessee's locality rule, "a medical expert must demonstrate a modicum of familiarity with the medical community in which the defendant practices or a similar community." *Shipley*, 350 S.W.3d at 552. The Tennessee Supreme Court detailed several ways an expert may acquire that familiarity. First, an expert may testify "that he or she has reviewed and is familiar with pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area." *Id.* Second, an expert may testify that she "has discussed with other medical providers in the pertinent community or a neighboring one regarding the applicable standard of care relevant to the issues presented." *Id.* Third, an expert may testify that she "has visited the community or hospital where the defendant practices." *Id.* Firsthand knowledge of the pertinent

medical community and appropriate standard of medical care is unnecessary. *See id.* at 552–53. Except for matters covered by the common knowledge exception, "the evidence required by section 29-26-115(a) must be proven through the testimony of a qualified expert witness." *Young v. Frist Cardiology, PLLC*, 599 S.W.3d 568, 571 (Tenn. 2020); *see also Shipley*, 350 S.W.3d at 537.

The district court held that Dr. Salazar "failed to make a strong enough affirmative showing that she has any familiarity with the Memphis medical community and standard of care." Order Granting Defendant's Motion to Exclude; Order to Show Cause, R. 53, Page ID #410. In so holding, the district court cited Dr. Salazar's lack of experience treating patients in Memphis and her inability to state with any degree of confidence Memphis' population, Memphis' demographics, Memphis' socioeconomic makeup, the number of hospitals in Memphis, whether there were any teaching hospitals in Memphis, and any details about Defendant's Regional One Health facility beyond those "derived from assumptions she has made from the Plaintiff's medical record." *Id.* at Page ID #407–10. Nonetheless, Plaintiff claims the district court erred because Dr. Salazar went to medical school in Nashville, Tennessee, was trained in geriatric care, had reviewed Defendant's medical records as to its treatment of Plaintiff and became familiar with the Regional One Health facility, and was familiar with Memphis through her past visits and family.

Our review turns on whether the district court abused its discretion in excluding Dr. Salazar's testimony after considering her deposition testimony and supplementary affidavit. *See Gales*, 91 F.4th at 435. Dr. Salazar's performance at deposition demonstrates her lack of knowledge of the Memphis, Tennessee medical community.

> Q.     Do you know -- do you know the population of Memphis, how many people reside here?
>
> A.     I do not.

Q.   Do you know anything about the demographic makeup of Memphis?

A.   I do not.

Q.   What about the socioeconomic makeup of Memphis?

A.   No, I don't know.

Q.   Do you know how many hospitals are in Memphis?

A.   No.

Q.   Are you aware if there are any medical schools in Memphis?

A.   I believe that there is a medical school.  I think it's the University of Tennessee maybe.

Q.   Do you know if there are any teaching hospitals in Memphis and what those hospitals are?

A.   I don't know the specific teaching hospitals.  I do not.

Q.   What do you know about Regional One Health?

A.   I don't know anything -- prior to this case I don't know anything about it.

Q.   And what have you learned about Regional One Health reviewing this case?

A.   It must be a Level 1 trauma center I'm assuming given her injury.

I did see some medical records where there were – maybe a medical student wrote some notes.  And there were some by residents, like a trauma resident.  So these are things that I know.

Q.   Do you know the specialties that are offered at Regional One Health?

A.   Only based off of the medical records that I could see.  But given that it's a Level 1 trauma center, I believe there is universal -- or it could be a Level 2, but there's universal specialties that are required for that capability.

Q.   And do you know how many beds are at Regional One?

A.   I do not.

Salazar Dep., R. 31-3, Page ID #249–50.

While an expert "is not required to be familiar with all of the medical statistics of a particular community" to satisfy the locality rule, "a complete lack of knowledge" will not suffice.

*See Mabon v. Jackson-Madison Cnty. Gen. Hosp.*, 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997) (citing *Ledford v. Moskowitz*, 742 S.W.2d 645, 648 (Tenn. Ct. App. 1987)). The district court correctly discerned Dr. Salazar's complete lack of familiarity with the Memphis medical community and the applicable standard of care. Dr. Salazar could not recall Memphis' population, demographics, or socioeconomic makeup. Dr. Salazar also could not confidently state whether Regional One Health was a "Level 1" or "Level 2" trauma center, nor did she know how many beds were at Regional One Health. She did not know if there were any teaching hospitals in Memphis. Dr. Salazar's subsequent affidavit offers little respite; it repeats claims of her familiarity with Memphis that her answers at deposition plainly contradict.

To be sure, several of Dr. Salazar's proffered reasons could have provided her the modicum of familiarity demanded by the locality rule. Dr. Salazar's frequent visits and family in Memphis, her review of Defendant's medical records as to Plaintiff, and her past medical training in Nashville could fall squarely into any of the three methods the Tennessee Supreme Court approved as sufficient to establish an expert's compliance with the locality rule. *See Shipley*, 350 S.W.3d at 552. Nonetheless, Dr. Salazar's performance at deposition makes clear that these potential sources of familiarity were of little assistance to her. We have upheld past district court decisions to exclude expert testimony that contained some evidence of familiarity which "barely pass[es] muster" but otherwise demonstrated a complete lack of knowledge of the pertinent medical community. *See Sommer*, 317 F.3d at 695. Similarly, in this case, the district court did not abuse its discretion in finding that Dr. Salazar was not at all familiar with the Memphis medical community or the applicable standard of care.

b. ***Dr. Salazar Could Not Demonstrate that Atlanta, Georgia was a Similar Community to Memphis, Tennessee to Meet the Requirements of the Locality Rule***

An expert may alternatively satisfy Tennessee's locality rule through her familiarity with a similar community and the applicable standard of care. When an expert chooses to do so, her burden is doubly demanding: The expert must not only establish familiarity with a separate community but must also "indicate why the [defendant's] medical community was similar to, and thus had the same standard of professional care as the community with which [the expert] was familiar." *Stovall v. Clarke*, 113 S.W.3d 715, 722–23 (Tenn. 2003) (quoting *Robinson*, 83 S.W.3d at 725); *c.f. Johnson v. Richardson*, 337 S.W.3d 816, 821–22 (Tenn. Ct. App. 2010). The expert should therefore have at least some knowledge of the defendant's medical community to make the comparison. *See Gales*, 91 F.4th at 437. An expert may employ the same methods to establish similarity as she would to establish familiarity with the pertinent community. *See Shipley*, 350 S.W.3d at 552.

Dr. Salazar could not make this comparison to satisfy the locality rule. Before she can claim that Atlanta and Memphis are similar communities, she must demonstrate some knowledge as to both. *See Roberts v. Bicknell*, 73 S.W.3d 106, 114 (Tenn. Ct. App. 2001). As discussed, Dr. Salazar demonstrated no knowledge of the Memphis medical community and the applicable standard of care. Her arguments that Memphis and Atlanta have similar size, population, and demographics hold little water when she was unable to articulate statistical information regarding Memphis with any degree of certainty in her deposition. Likewise, Dr. Salazar did not know whether there were teaching hospitals in Memphis or Regional One Health's bed-size capacity.

Plaintiff's remaining arguments to the contrary are of no moment. First, Plaintiff argues that Regional One Health and Dr. Salazar's home hospital are teaching hospitals with similar bed-

size capacities and medical care services. However, it is the expert, not Plaintiff, who must have knowledge of the purported grounds for similarity or familiarity of a medical community. *See Roberts*, 73 S.W.3d at 114 ("The [locality rule] . . . requires the expert to have *some* knowledge of the practice of medicine in the community at issue or a similar community." (emphasis in original)); *see also Shipley*, 350 S.W.3d at 537 ("[E]xpert testimony must be provided by a plaintiff to establish the elements of his or her medical negligence case, subject to the 'common knowledge' exception that is not applicable here." (citations omitted)). Dr. Salazar never compared the facilities' bed-size capacities or their teaching hospital designations at deposition or in her affidavit, nor could she because she did not know Regional One's Health bed-size capacity or whether there were any teaching hospitals in Memphis. She also did not compare the facilities' medical care services. Thus, these alleged similarities offered by Plaintiff do not serve as a basis for showing that Atlanta and Memphis are similar communities.

Next, Plaintiff contends that Dr. Salazar's qualifications which satisfy Tennessee Code Annotated section 29–26–115(b) should likewise satisfy the requirements of the locality rule. She assumes Memphis and Atlanta are similar medical communities based on the above comparisons Dr. Salazar either did not make or could not make due to her lack of knowledge of Memphis. According to Plaintiff, Dr. Salazar's licensing, specialties, and medical practice in Atlanta can be used to establish the standard of care in Memphis. But Plaintiff never raised this argument before the district court and has thus forfeited it. *See In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003).

Putting aside the facts that Dr. Salazar failed to establish that Memphis and Atlanta were similar, Plaintiff misstates the relationship between sections 29–26–115(b) and 115(a), the latter of which contains the locality rule. "Subsections (a) and (b) serve two distinct purposes. Subsection (a) provides the elements that must be proven in a medical negligence action and

subsection (b) prescribes who is competent to testify to satisfy the requirements of subsection (a)." *Shipley*, 350 S.W.3d at 550; *see also Bowen v. Nelson*, No. W2024-00749-COA-R3-CV, 2025 WL 1504456, at \*7 (Tenn. Ct. App. May 27, 2025) ("[T]he locality rule is separate from the competency requirements of Tennessee Code Annotated section 29–26–115(b)."). Thus, while Dr. Salazar's license in emergency medicine, her training in geriatrics, and her experience with pressure ulcers led the district court to conclude that Dr. Salazar was competent to testify pursuant to subsection 115(b), the strictures of the locality rule were not similarly satisfied by those facts.

Finally, Plaintiff claims that the Atlanta and Memphis medical communities have similar access to medical information. Vaguely asserting that two communities have shared medical characteristics without relating those similarities to the instant case does not satisfy the locality rule. *See Johnson v. Richardson*, 337 S.W.3d 816, 822 (Tenn. Ct. App. 2010) (holding that a vague assertion that the relevant medical communities had the same medical specialties did not meet the locality rule). Dr. Salazar does not elaborate about what she meant when she asserted that the two communities have similar "access to medical information" beyond stating this as a matter of fact in her affidavit. Because Tennessee common law requires more, this argument does not satisfy the locality rule.

Dr. Salazar's deposition and subsequent affidavit failed to establish any knowledge or familiarity with the Memphis, Tennessee medical community and the applicable standard of care. Without any knowledge of Memphis, Dr. Salazar could not compare it to Atlanta. The district court therefore did not abuse its discretion when it excluded Dr. Salazar's testimony for failure to demonstrate familiarity with a similar community.

## 2. Entry of Summary Judgment for Defendant

Plaintiff claims the district court erred when it entered summary judgment *sua sponte* for Defendant. As a threshold inquiry, Defendant contends that Plaintiff forfeited her right to appeal the district court's decision to enter judgment in Defendant's favor because she failed to properly develop that argument in her opening brief. While Plaintiff must argue an issue in more than a "perfunctory manner" in her opening brief to not forfeit an argument, Plaintiff's opening brief has met this threshold. *Kuhn v. Washtenaw County*, 709 F.3d 612, 624–25 (6th Cir. 2013). The district court's decision to enter summary judgment for Defendant is based on its exclusion of Dr. Salazar's testimony and Plaintiff's unwillingness or failure to replace her expert. Plaintiff's opening brief, which addresses the exclusion of Dr. Salazar's testimony, raises "specific challenges" to the district court's decision to enter summary judgment for Defendant. *See id.* at 625. Therefore, Plaintiff did not forfeit appellate review of the district court's entry of summary judgment for Defendant. Although Plaintiff did not forfeit appellate review, Plaintiff can only prevail in this appeal if the district court's exclusion of Dr. Salazar's testimony was erroneous— inasmuch as Plaintiff failed to seek leave to substitute a qualified medical expert in the place of Dr. Salazar.

Nonetheless, the district court's decision to enter summary judgment was not in error. The district court provided Plaintiff fourteen-days' notice of its intent to enter judgment and an adequate opportunity to come forward with all her evidence. Under our precedents, this was adequate notice and opportunity to respond. *See Sommer*, 317 F.3d at 695–96 (fourteen days); *Yashon*, 737 F.2d at 552 (ten days). The merits of the district court's decision to enter judgment in favor of Defendant also pass muster: Without expert testimony, Plaintiff could not proceed with her Tennessee medical malpractice claims against Defendant. *See Shipley*, 350 S.W.3d at

537–38. Thus, even viewing all the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, Defendant was still entitled to judgment as a matter of law. *See Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020).

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's order entering summary judgment in favor of Defendant.